■ In the Matter of Thomas F. Moran, Petitioner, v Mark R. Chassin, as Commissioner of Health of the State of New York, et al., Respondents. [638 NYS2d 835] —Spain, J.

In March 1991 the Michigan Attorney-General commenced a proceeding against petitioner alleging that he suffers from epilepsy, a seizure disorder, and an emotional disorder which affected his ability to practice medicine in a safe and competent manner. The Michigan proceeding included a summary of 12 patients' complaints regarding their medical treatment by petitioner. Petitioner, after refusing to comply with an order to submit to a psychiatric examination, defaulted in the Michigan proceeding. By final order dated June 1, 1992, the Michigan Department of Commerce Board of Medicine suspended petitioner's license to practice medicine for six months and one day. In September 1993, the New York Bureau of Professional Medical Conduct (hereinafter the BPMC) commenced a proceeding against petitioner pursuant to Public Health Law § 230 (10) (p). Specifically, he was charged with professional misconduct as defined in Education Law § 6530 (9) (b) and (d) because a disciplinary action in another State had resulted in the suspension of his license and because he had been found guilty of improper professional conduct by a disciplinary agency of another State.

Following an administrative hearing before a Hearing Committee convened by the State Board for Professional Medical Conduct (hereinafter the Committee), a determination was rendered sustaining the charge that petitioner's license had been suspended in Michigan and concluding that petitioner's conduct, if committed in New York, would constitute violations of Education Law § 6530 (8) and (15). The Committee suspended petitioner's license to practice medicine for three years, but stayed the suspension and placed him on probation; as a condition of his probation he was, *inter alia*, directed to limit his practice "to those activities where he would have no direct patient care responsibilities or any direct patient contact". The Committee also determined that petitioner should engage in ongoing treatment with both a neurologist and a psychiatrist.

Both the BPMC and petitioner sought review of the Committee's determination. Upon review, respondent Administrative Review Board for Professional Medical Conduct (hereinafter

the ARB) sustained the Committee's finding that petitioner was guilty of professional misconduct. Further, the ARB determined that the Committee's penalty which prohibited petitioner from engaging in direct patient contact and patient care was appropriate, but should be permanent and not limited to the period of probation. The ARB reasoned that "[t]here is no indication from the expert testimony that [petitioner's] condition will improve over the course of time or of treatment". Along with this sanction, the ARB determined that petitioner was not capable of clinical practice. Petitioner commenced the instant CPLR article 78 proceeding to challenge the ARB's determination.

Initially we note that, although petitioner participated in the New York proceeding, he did not contest the fact that he was guilty of professional misconduct in New York as a result of being disciplined in Michigan. Rather, he argues that the evidence of two of his witnesses, James Rowan, a neurologist with expertise in epilepsy, and Steven Katz, one of petitioner's psychiatrists, supports the proposition that petitioner, under specific limitations, should be allowed to continue direct patient care in New York. This Court's review of the ARB's sanction, however, is limited to determining whether it was so disproportionate to his offense as to be shocking to one's sense of fairness (see, Matter of Pell v Board of Educ., 34 NY2d 222, 233; Matter of Adler v Bureau of Professional Med. Conduct, 211 AD2d 990, 993; Matter of Jean-Baptiste v Sobol, 209 AD2d 823, 825). Here, petitioner's offenses include violations of the Education Law; specifically, he was found, based on the Michigan proceedings, to have "a psychiatric condition which impairs [his] ability to practice" (Education Law § 6530 [8]) and that he "[f]ail[ed] to comply with an order issued pursuant to [Public Health Law § 230 (7)]" (Education Law § 6530 [15]). We conclude that, given these findings and the fact that it is proper to limit a physician's area of practice (see, Public Health Law § 230-a [3]; Matter of Colvin v Chassin, 214 AD2d 854, 855), permanently precluding petitioner from patient contact and from clinical medicine does not shock one's sense of fairness. The record, including the limitations suggested by petitioner's own witnesses, the Michigan record of proceedings which cites many instances of inappropriate behavior in petitioner's interaction with patients and the extended potential permanence of petitioner's condition, amply supports the reasonableness of the ARB's sanction.

Finally, we reject petitioner's contention that the ARB's determination is in contravention of the Americans with Dis-

abilities Act of 1990 (*see*, 42 USC § 12132) and the Rehabilitation Act of 1973 (*see*, 29 USC § 794). The ARB's determination was based upon the earlier Michigan determination and not based solely on petitioner's epilepsy; the Michigan determination cited petitioner's epilepsy, as well as his psychiatric condition and his failure to comply with an order. Petitioner was sanctioned as a medical professional in Michigan and subsequently in New York for reasons other than his disability. Petitioner's contention that he is " 'otherwise qualified' " is unavailing (*Southeastern Community Coll. v Davis*, 442 US 397, 406; *Mrs. C. v Wheaton*, 916 F2d 69, 74). As indicated by petitioner's own witnesses, petitioner cannot perform his functions without some type of modifications. Since petitioner would need certain modifications at the job site in order to perform the functions of patient care, he cannot perform in spite of his handicap and, therefore, he is not " 'otherwise qualified' ". While reasonable modifications may be necessary to assist a handicapped individual in performing tasks (*School Bd. v Arline*, 480 US 273, 287, n 17), the modifications indicated by Rowan and Katz are unreasonable and would place substantial burdens on those who would have to work with and supervise petitioner (*see, e.g., Treadwell v Alexander*, 707 F2d 473, 478).

Mercure, J. P., Crew III, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.