■ In the Matter of SYED IKRAMUDDIN, Petitioner, v BARBARA A. DEBUONO, as Commissioner of the State of New York Department of Health, et al., Respondents. [683 NYS2d 319] —Mikoll, J. P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which, *inter alia*, revoked petitioner's license to practice medicine in New York.

Petitioner was licensed to practice medicine in New York in 1976. He was also so licensed in Kentucky, where he practiced as a general surgeon for 19 years.

By amended complaint dated September 5, 1996, the Kentucky Board of Medical Licensure (hereinafter KBML) charged petitioner with eight counts of professional misconduct including, *inter alia*, gross incompetence, gross ignorance, gross negligence and malpractice in the treatment of seven patients, and making false statements in the medical records of one such patient. The KBML issued an immediate order of temporary suspension, which was upheld following a hearing to determine probable cause to believe that petitioner's practice constituted a danger to the general public. Petitioner thereafter unsuccessfully challenged the order of temporary suspension in three Kentucky state courts.

At an administrative hearing commenced by the KBML, testimony was received from eight witnesses, including the Board's physician-consultant, who detailed the relevant patient case histories and rendered the opinion that petitioner had deviated from acceptable standards of surgical care as to six patients, was grossly negligent with respect to one patient, had falsified the medical record of one patient, had generally evinced gross incompetence and ignorance and in many cases had no clear plans of treatment for his patients. Before the evidence was completed, petitioner and the KBML entered into a 16-page "Agreed Order of Suspension/Probation" (hereinafter the agreed order) resolving the charges. The agreed order set forth stipulations of facts, conclusions of law and the terms of the penalty imposed. Among the recitations under "Stipulated Conclusions of Law" was the parties' acknowledgment that were the hearing to proceed to conclusion, the evidence would be sufficient to establish that petitioner's conduct constituted gross negligence and malpractice in violation of Kentucky statutes and that he had knowingly made false statements in a patient's medical records. The findings of fact substantiating this conclusion comprise 11 pages of the agreed order.

Thereafter, respondent Bureau of Professional Medical Conduct (hereinafter BPMC) initiated a referral proceeding with two specifications of professional misconduct pursuant to Education Law § 6530 (9) (b) and (d)[1] based upon the Kentucky disciplinary action and agreed order. A hearing pursuant to Public Health Law § 230 (10) (p) was held on October 15, 1997, at which petitioner appeared with counsel, testified and presented evidence on his behalf. The Hearing Committee of the State Board for Professional Medical Conduct determined that petitioner committed professional misconduct under Education Law § 6530 (9) (d) in that the conduct upon which the Kentucky disciplinary action was based would, if committed in New York, constitute professional misconduct under the laws of this State under at least four separate sections of Education Law § 6530 (negligence on more than one occasion, gross negligence on at least one occasion, incompetence on more than one occasion and practicing the profession fraudulently). Finding the sanctions imposed by Kentucky inadequate to protect the New York public, the Hearing Committee revoked petitioner's license, and this proceeding to annul its determination ensued.

Petitioner's principal contention on this proceeding is that no collateral estoppel effect should be given to the Kentucky agreed order because it was a negotiated compromise entered with no final adjudication on the merits. This argument, and petitioner's reliance on *Matter of Halyalkar v Board of Regents* (72 NY2d 261) and *Matter of Becker v DeBuono* (239 AD2d 664), is misplaced. Significant factual differences and legal consequences distinguish *Halyalkar* and *Becker* from the present case.

The holding of *Halyalkar* derived from legitimate due process concerns and recognized that principles of fundamental fairness militated against according a factually undeveloped guilty plea collateral estoppel effect. As emphasized by the Court of Appeals, the sole basis for the agreed order in *Halyalkar* was the physician's guilty plea and acceptance of a minimal penalty; no hearing was held and no findings or stipulations of misconduct were made. In *Becker*, collateral estoppel was inappropriate where the consent order explicitly provided that no findings of liability or wrongdoing were made. Neither circumstance is present here.

Petitioner's claim, asserted repeatedly in his brief, that the

---

1. The specification under Education Law § 6530 (9) (b) was withdrawn on the day of the hearing and consequently the Hearing Committee's determination was based solely upon Education Law § 6530 (9) (d).

Kentucky agreed order was entered into without acknowledgment of any factual allegations of misconduct by petitioner, is disingenuous at best.[2] He was afforded a full and fair opportunity to litigate the charges in Kentucky, and did so until he voluntarily agreed to forego continuation of the hearing, acknowledging that were it to continue there would be sufficient evidence to support a finding of misconduct. Far beyond simply acknowledging his legal guilt of the charges, petitioner stipulated to extensive, specific factual findings detailing numerous instances of professional misconduct already established by testimony from an expert witness. The agreed order specifically recites, under "Stipulations of Fact," the following: "The parties entered into the following Stipulations of Fact, which serve as the factual basis for this Agreed Order of Probation." The ensuing pages of the agreed order set forth detailed substantiation for his admission of misconduct. Collateral estoppel effect was therefore properly given to the Kentucky agreed order.

Our review of the sanction imposed is limited to determining whether "it was so disproportionate to the offense as to be shocking to one's sense of fairness" (*Matter of Moran v Chassin*, 225 AD2d 814, 815, *lv denied* 88 NY2d 807). The Hearing Committee based its determination upon petitioner's acknowledgment of numerous instances of negligent care among his patients in Kentucky, as to which it found that he neither appreciated the consequences of his misconduct nor offered any mitigating circumstances in defense thereof. In fact, the Hearing Committee found that petitioner's hearing testimony was inconsistent, confused, evasive and lacking in credibility. Petitioner had previously been disciplined in New York. Although the Hearing Committee considered sanctions similar to those imposed in Kentucky, it concluded that such measures would be inadequate to protect the people of New York, indicating that had such conduct occurred in this State the penalty would unquestionably have been revocation. Under all of the circumstances, we do not find the penalty to be shockingly unfair.

Crew III, Yesawich Jr., Spain and Graffeo, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.

---

2. Petitioner also raised the argument of the inapplicability of collateral estoppel before the Hearing Committee, which rejected it for the same reasons as do we.