■ In the Matter of MICHAEL J. HASON, Petitioner, v DEPARTMENT OF HEALTH et al., Respondents. [744 NYS2d 86] —Spain, J. Proceeding pursuant to CPLR article 78 (initiated in the Supreme Court, New York County, pursuant to Public Health Law § 230-c [5] and transferred to this Court) to review a determination of the Administrative Review Board for Professional Medical Conduct which suspended petitioner's license to practice medicine in New York.

Petitioner was licensed to practice medicine in New York in 1993, and is also an attorney admitted to practice law in this state. In 1995, he applied for a license to practice medicine in California, an application which was ultimately denied by the Division of Licensing of the Medical Board of California (hereinafter the California Board) by order dated February 24, 1998. The California Board considered a 1996 psychiatric examination of petitioner—conducted at its request—and, following an evidentiary hearing, found that his ability to practice medicine is impaired because he suffers from mental illness (*see*, Cal Bus & Prof Code § 822). That conclusion was based upon a di-

agnosis of bipolar affective disorder with severe depression, a narcissistic personality disorder and an indication that he experienced psychotic symptoms.[1] The record reflects that petitioner had been dismissed from or withdrew from five or more residency or internship programs between 1990 and 1994 due to depression or other problems.

The Bureau of Professional Medical Conduct (hereinafter BPMC) thereafter charged petitioner with professional misconduct based upon the California license refusal and finding of psychiatric impairment, alleging that the conduct underlying it would, if committed in New York, constitute professional misconduct (Education Law § 6530 [9] [d]), namely, "having a psychiatric condition which impairs the licensee's ability to practice" (Education Law § 6530 [8]). Pursuant to the expedited proceeding provided by Public Health Law § 230 (10) (p) for cases of professional misconduct based solely on Education Law § 6530 (9) (*see, Matter of Becker v DeBuono*, 239 AD2d 664, 664-665), also known as a referral proceeding, the Hearing Committee of the State Board for Professional Misconduct (hereinafter Hearing Committee) held a hearing and restricted the proof "to evidence and testimony relating to the nature and severity of the penalty to be imposed upon the licensee" (Public Health Law § 230 [10] [p]). Petitioner appeared pro se, testified, presented documentary evidence including letters of reference, and called one witness.

Petitioner essentially testified that he had been successfully undergoing treatment and counseling for two years and believed that he had been stable for at least one year, and disputed some of the findings in the California decision and the psychiatric evaluation and diagnoses upon which it was based. Petitioner called David Molko, a Florida social worker who had been counseling him since June 1997. Molko testified that he diagnosed petitioner with "major depression in remission," but found no evidence of narcissistic personality disorder. He described petitioner's rehabilitation as an ongoing process, but opined that he could practice medicine safely and effectively "with supervision," both therapeutic and professional. He indicated that petitioner has gained significant insight into his problems, is currently taking medication and has had no discernible relapse of depression, but that continued treatment

---

1.  Petitioner's action against the psychiatrist and others under 42 USC § 1983 was dismissed for failure to state a cause of action (*Hason v Tourtellotte*, 11 Fed Appx 745 [9th Cir 2001]), as was his action against another physician who submitted a letter to the California Board (*Hason v Davis*, 210 F3d 354 [2nd Cir 2000], *cert denied* 531 US 1040).

is necessary. Petitioner also submitted, inter alia, the letter of a psychiatrist who agreed with Molko's major depression diagnosis, described it as "in remission," ruled out bipolar disorder, and stated that petitioner was fully compliant with treatment and that his condition had "significantly improved over time" with a psychotropic medication. He opined that petitioner "has been psychiatrically stable for approximately one year and nine months" and that he "can safely practice medicine." However, petitioner's testimony and other record evidence established that the psychiatrist primarily managed petitioner's pharmacological needs, did not provide therapy and was only seeing him every two months for abbreviated 15 minute visits.

The Hearing Committee sustained the charge, finding petitioner's California application was appropriately denied based upon his psychiatric history, which constitutes professional misconduct in this state (see, Education Law § 6530 [8], [9] [d]), and revoked petitioner's license to practice medicine. Petitioner sought review by the Administrative Review Board for Professional Medical Conduct (hereinafter ARB; see, Public Health Law § 230-c [4]), which sustained the Hearing Committee's determination that the California license denial established the professional misconduct charge under Education Law § 6530 (9) (d). The ARB, inter alia, concluded that Molko lacked experience in treating physicians and knowledge about medical practice and agreed with the Hearing Committee's conclusion that petitioner lacked the fitness to return to practice at that time. However, upon consideration of the evidence concerning petitioner's condition and treatment since he left California in 1997, the ARB overturned the Hearing Committee's revocation of petitioner's license, instead suspending his license for one year and "thereafter until such time as [petitioner] can demonstrate his fitness to practice medicine to the BPMC Restoration Committee." The ARB indicated its intent to "encourag[e] [petitioner] to remain in treatment with regaining active licensure in New York as a goal." Petitioner thereafter commenced the instant CPLR article 78 proceeding to annul the ARB's determination and penalty.

Initially, the ARB properly conducted a referral proceeding under Public Health Law § 230 (10) (p) and correctly gave collateral estoppel effect to the decision of the California Board denying petitioner's application for a license based upon its determination that petitioner is impaired by a mental illness. As such, petitioner was not entitled to relitigate the merits of the California determination (see, Cal Bus & Prof Code § 822; see

*also*, Cal Bus & Prof Code § 480 [a] [3]; § 2221 [a]; *Matter of Ricci v Chassin*, 220 AD2d 828). Notably, the predicate California determination was rendered after a full contested evidentiary hearing, petitioner was represented by counsel and was afforded ample opportunity to present evidence, a psychiatric examination of petitioner was conducted and a determination was rendered on the merits. BPMC met its burden in showing that the issue of petitioner's mental impairment was the same in both proceedings (*compare*, Cal Bus & Prof Code § 822, *with* Education Law § 6530 [8], [9] [d]) and was actually litigated and resolved in the California proceeding, and petitioner failed to show that he was not given a full and fair opportunity to contest the issue in that prior proceeding and, thus, collateral estoppel applies (*see, Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455-456; *Ryan v New York Tel. Co.*, 62 NY2d 494, 501; *Gilberg v Barbieri*, 53 NY2d 285, 291; *cf., Matter of Halyalkar v Board of Regents of State of N.Y.*, 72 NY2d 261, 266-268; *Matter of Herberman v Novello*, 280 AD2d 814; *Matter of Ikramuddin v DeBuono*, 256 AD2d 1039, 1040-1041; *Matter of Becker v DeBuono*, 239 AD2d 664, *supra*).

Contrary to petitioner's contentions, finality in the prior administrative proceeding is not a prerequisite under Education Law § 6530 (9) (d) (*see, Matter of Ricci v Chassin, supra* at 829; *contrast*, Education Law § 6530 [9] [c]) but, in any event, the California administrative determination was final by statute (*see*, Cal Bus & Prof Code § 2230 [b]).[2] Also, neither the fact that the California proceeding involved a license denial as compared to the suspension of a license here, nor the fact that petitioner bore the burden of proof in the California proceeding but not in the New York proceeding precludes according collateral estoppel effect to the California determination (*see, Matter of Capoccia*, 272 AD2d 838, 841, *lv dismissed* 95 NY2d 887). Indeed, section 6530 clearly contemplates that a licensee in this state may be guilty of professional misconduct—and subject to Public Health Law § 230-a penalties, including revocation and suspension of a medical license—based upon, inter alia, the denial of a license by a professional disciplinary agency of another state, provided the conduct resulting in the denial would, if committed in this state, constitute professional misconduct (Education Law § 6530 [9] [d]). Further, the conduct or status here underlying the denial of the California license (*see*, Cal Bus & Prof Code § 822)—essentially a condi-

---

2. Petitioner's nonfinality claim is errantly premised, in part, on his pending federal action challenging the California license denial (*see, Hason v Medical Bd. of Cal.*, 279 F3d 1167 [9th Cir 2002]).

tion of impaired mental health—corresponds with the definition of professional misconduct in this state, namely, "having a psychiatric condition which impairs the licensee's ability to practice" (Education Law § 6530 [8]; *see, Matter of Pisnanont v New York State Bd. for Professional Med. Conduct*, 266 AD2d 592, 593-594).

Thus, upon review, we conclude that the ARB's determination sustaining the charge of professional misconduct under Education Law § 6530 (9) (d) has a rational basis which is factually supported and was not arbitrary and capricious, affected by an error of law or an abuse of discretion (*see, Matter of Khan v New York State Dept. of Health*, 286 AD2d 562, 562-563). Further, to the extent that petitioner challenges the findings of the Hearing Committee, we note that our review of the Hearing Committee's decision is precluded as petitioner sought review of such decision from the ARB (*see, Matter of Weg v DeBuono*, 269 AD2d 683, 685-686, *lv denied* 94 NY2d 764; *see also, Matter of Khan v New York State Dept. of Health, supra* at 562).

Petitioner's remaining contentions pertaining to the California determination and the ARB's determination sustaining the charge are either precluded as attempts to relitigate the California decision, unpreserved issues which are not reviewable by this Court in this proceeding (*see, Matter of Khan v New York State Dept. of Health*, 96 NY2d 879, 880), or without merit. Whether the medical testimony is credible and the weight that should be accorded to conflicting medical evidence are issues to be resolve by the ARB, not this Court (*see, Matter of Wilkins v New York State Dept. of Health*, 289 AD2d 634, 635, *lv denied* 97 NY2d 612; *Matter of Pisnanont v New York State Bd. for Professional Med. Conduct, supra* at 594; *see also, Matter of St. Lucia v Novello*, 284 AD2d 591, 593). We also find lacking in merit petitioner's contentions that the definition of "professional misconduct" under Education Law § 6530 (9) (d) or § 6530 (8) is unconstitutionally vague or fails to provide sufficient warning concerning the proscribed conduct (*see, Matter of St. Lucia v Novello, supra* at 592; *Matter of Addei v State Bd. for Professional Med. Conduct*, 278 AD2d 551, 552; *Matter of Gould v Board of Regents of Univ. of State of N.Y.*, 103 AD2d 897, 897; *see also, Matter of Block v Ambach*, 73 NY2d 323, 334). Petitioner's remaining claims raised under the rubric of denial of due process are unavailing, including those alleging bias and those directed at the delay in holding a hearing in California and in issuing charges in this state for which no actual prejudice is demonstrated or apparent (*see, Matter of*

*Moss v Chassin*, 209 AD2d 889, 889-890, *lv denied* 85 NY2d 805, *cert denied* 516 US 861; *see also*, *Matter of Giffone v DeBuono*, 263 AD2d 713, 714-715).

With regard to the sanction, however, we find merit in petitioner's contention that it is not authorized by Public Health Law § 230-a or otherwise. A licensee, as here, found guilty of professional misconduct under Education Law § 6530 "shall be subject to penalties as prescribed in [Public Health Law § 230-a]" (Education Law § 6530), unless the charges are dismissed in the interest of justice. Included among the penalties listed in Public Health Law § 230-a are censure and reprimand, suspension of a license, limitation of a license, revocation or annulment of a license, fines, further education and training, and probation (*see*, *Matter of Caselnova v New York State Dept. of Health*, 91 NY2d 441, 444). Subdivision (2) of Public Health Law § 230-a provides for the sanction of "suspension of [a] license," which may be imposed:

"(a) wholly, for a *fixed period of time*; (b) wholly, except to the limited extent required for the licensee to successfully complete a course of retraining; (c) wholly, until the licensee successfully completes a course of therapy or treatment prescribed by the board; (d) partially, until the licensee successfully completes a course of retraining in the area to which the suspension applies; (e) partially, for a specified period" (emphasis supplied). Here, the ARB overturned the Hearing Committee's revocation of petitioner's license (Public Health Law § 230-a [4]) and suspended his license "for one year certain *and for such time thereafter until the [petitioner] can demonstrate* to a BPMC Committee [his] *fitness to return to practice*" (emphasis supplied). The ARB further provided that the Hearing Committee "shall consider [petitioner's] application for regaining his license under the terms for restoration in [Public] Health Law § 230 (13) (a) * * *, i.e. whether [petitioner] remains incapacitated from practice."

While the ARB was authorized to "wholly" suspend petitioner's license for one year, the highlighted condition or qualifying language is not authorized by paragraphs (a), (b) or (c) of Public Health Law § 230-a (2), i.e., it is neither a suspension "for a fixed period of time" nor subject to successful completion of retraining or a prescribed "course of therapy or treatment." We are not at all persuaded by respondents' argument that this suspension is for a "fixed period of time" under Public Health Law § 230-a (2) (a) on the premise that it is "based upon the time at which he demonstrates his fitness to resume practice." Rather than being for a fixed period of time, the suspension by

its term is indefinite and is not completed either upon any specified date or the passage of any specified amount of time, e.g., 24 months. Clearly, respondents recognize as much, contending that the period of time it will take petitioner to demonstrate his fitness is "unknowable." Further, respondents' reliance on *Matter of Caselnova v New York State Dept. of Health* (91 NY2d 441, *supra*), for the proposition that the ARB has the necessary flexibility to impose conditions on suspensions of licenses, is misplaced. *Matter of Caselnova* involved a sanction of *probation* under Public Health Law § 230-a (9), which by statute may be combined with other penalties authorized by Public Health Law § 230-a or by the terms of Public Health Law § 230 (18) (*id.* at 444-445). In contrast, the condition attached here to the one-year suspension penalty—subjecting it to petitioner's thereafter satisfying a Restoration Committee of his fitness pursuant to Public Health Law § 230 (13) (a) which pertains only to the *voluntary surrender* of a license—is not authorized by Public Health Law § 230-a or otherwise.

If a complete suspension combined with petitioner's successful completion of prescribed therapy or treatment was intended, it would have been authorized under Public Health Law § 230-a (2) (c), but this was not the sanction imposed here. Likewise, the ARB was authorized to impose a one-year suspension (Public Health Law § 230-a [2] [a]) combined with probation, subject to any additional requirements "as reasonably relate to the misconduct found or are necessary to protect the health of the people" (Public Health Law § 230 [18] [a] [x]; *see*, Public Health Law § 230-a [9]; *see also, Matter of Caselnova v New York State Dept. of Health, supra* at 444-445; *Matter of Hodge v New York State Dept. of Educ.*, 172 AD2d 891, 893, *appeal dismissed* 78 NY2d 950, *cert denied* 502 US 953). Inasmuch as the ARB might select, on remittal, some statutorily authorized penalty less severe than revocation—such as, for example, one of those described above—we reject respondents' claim that if the sanction actually imposed is found to be impermissible, "the only possible result, in light of petitioner's disability, would be to revoke his license" under Public Health Law § 230-a (4). However, we render no judgment as to the appropriate penalty, but remit the matter to the ARB for imposition of a penalty as prescribed by law which may or may not include, at its discretion, consideration of additional evidence or testimony regarding petitioner's now current mental health status. In light of this conclusion, petitioner's remaining challenges to the penalty imposed are not addressed.

Cardona, P.J., Mercure, Crew III and Rose, JJ., concur.

Adjudged that the determination is modified, without costs, by annulling so much thereof as imposed a penalty; matter remitted to the Administrative Review Board for Professional Medical Conduct for imposition of an appropriate penalty; and, as so modified, confirmed.