Matter of Corines v NYS Dept. of Educ. Off. of the Professions (2025 NY Slip Op 01264)

Matter of Corines v NYS Dept. of Educ. Off. of the Professions

2025 NY Slip Op 01264

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

535634
[*1]In the Matter of Peter J. Corines, Appellant,
v
NYS Department of Education Office of the Professions, Respondent.

Calendar Date:January 15, 2025

Before:Egan Jr., J.P., Aarons, Fisher, McShan and Mackey, JJ.

Peter J. Corines, Eastchester, appellant pro se.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (Gerald Connolly, J.), entered May 18, 2022 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Board of Regents denying petitioner's request to restore his license to practice medicine.
Petitioner was issued a license to practice medicine in the state in 1976. After more than 20 years of practice, petitioner was charged in 1997 with 52 counts of professional misconduct by the Office of Professional Medical Conduct (hereinafter OPMC). Following a 15-day hearing, several charges were sustained against petitioner, including 13 separate acts of negligence concerning eight different patients; four incidents involving the practice of medicine with incompetence; seven acts of fraudulent billing concerning seven different patients; and 16 acts of failing to keep accurate records concerning 16 different patients. Charges were also sustained based upon petitioner's failure to disclose the termination of his privileges at certain hospitals when submitting appointment applications at two different hospitals. Based upon petitioner's pattern of negligence and deception, the Hearing Committee of OPMC, among other things, voted to revoke petitioner's license and impose a $90,000 penalty.[FN1]
In May 2013, petitioner filed an application with respondent seeking restoration of his medical license, and OPMC opposed. Petitioner then appeared before a Peer Committee in August 2014, which issued a report in October 2015 recommending denial of petitioner's application for restoration of his medical license. Thereafter, the Committee on the Professions (hereinafter COP) met with petitioner in September 2017. In June 2018, COP issued its draft report recommending against restoration and advised petitioner that he had 15 days to respond. Petitioner ultimately submitted a "preliminary reply" in November 2018. In December 2018, respondent asked petitioner to provide additional information regarding a recent criminal conviction and received no response. In March 2021, respondent notified petitioner that his application for the restoration of his medical license would be considered abandoned unless he advised otherwise. Petitioner responded that he did not want to abandon his application and respondent sent a letter to petitioner advising that it would provide another 15 days for petitioner to provide a response to the October 2018 request for additional information pertaining to his most recent criminal conviction. Petitioner submitted a letter advising, in sum and substance, that he was appealing the conviction and COP then issued a final report rendering the same recommendation to deny the restoration of petitioner's license. In July 2021, the Board of Regents voted to deny petitioner's application for restoration of his medical license and issued an order on August 2, 2021, agreeing with and adopting the recommendations of the Peer Committee and [*2]COP. The Commissioner of Education then issued an order memorializing that denial.
Thereafter, petitioner, pro se, commenced this CPLR article 78 proceeding challenging the Board of Regents' denial as arbitrary and capricious and lacking a rational basis, along with allegations of procedural errors during the review of his application. Supreme Court dismissed the petition, concluding that the Board of Regents' determination was supported by a rational basis and was not arbitrary and capricious. Petitioner appeals.
We affirm. At the outset, petitioner raises various contentions motivated by his belief that he was denied due process during the restoration application process. We have examined those contentions and find each without merit. As relevant here, we are cognizant that there is no "protected property interest in the restoration of [a] revoked medical license" (Chalasani v Elia, 2023 WL 8261493, *6, 2023 US Dist LEXIS 215393, *13 [ED NY, Mar. 1, 2023, No. 22 CV 794 (EK)(LB)]; see Harris v Mills, 478 F Supp 2d 544, 549 [SD NY 2007], affd 572 F3d 66 [2d Cir 2009]; see also Matter of Montgomery v New York State Dept. of Corr. & Community Servs., 192 AD3d 1437, 1440 [3d Dept 2021], lv denied 37 NY3d 908 [2021]). Nevertheless, noting that respondent has elected to provide informal hearings as part of the restoration application process, we find that the lack of a transcript from the hearing before COP does not reflect any infirmity with the process he was afforded, since no such transcript was required (see Matter of Greenberg v Board of Regents of Univ. of State of N.Y., 176 AD2d 1168, 1169 [3d Dept 1991]; 8 NYCRR 18.7, 24.5, 24.7; see also Matter of Horoshko v Ambach, 122 AD2d 447, 448 [3d Dept 1986]). Further, petitioner contends that a "hearing officer" was improperly substituted after the hearing before the Peer Committee and, moreover, that those individuals demonstrated bias against him. However, petitioner's arguments misstate the roles of those individuals, as the hearings that take place as part of an application to reinstate a revoked license are not subject to the State Administrative Procedure Act (see State Administrative Procedure Act § 102 [3]; Matter of Interstate Indus. Corp. v Murphy, 1 AD3d 751, 753 [3d Dept 2003]). Further, the record provides no indication of bias in the proceedings (see Matter of Hason v Department of Health, 295 AD2d 818, 822 [3d Dept 2002]). Finally, the record reflects that the lengthier delays in the proceedings were primarily attributable to petitioner's failure to provide requested documents or responses in a timely manner. Accordingly, considering that respondent was not required by statute or regulation to process petitioner's application within any delineated time frame, we find no merit to his contention that the delays he points to deprived him of adequate process (see id.).
Turning to the merits of petitioner's application, we find that the Board's determination to deny restoration is supported [*3]by a rational basis and is not arbitrary or capricious. "Education Law §§ 6510 and 6511 vest the Board of Regents with considerable discretion concerning matters of professional misconduct, including the revocation and restoration of medical licenses" (Matter of Nehorayoff v Mills, 95 NY2d 671, 674 [2001] [citation omitted]). The restoration of a revoked license "is permissive and is granted only in rare cases where the merit of the applicant is clearly established to the satisfaction of the Board" (id. [internal quotation marks, brackets and citations omitted]; accord Matter of Chalasani v Elia, 181 AD3d 1066, 1067 [3d Dept 2020], lv denied 36 NY3d 901 [2020]; Matter of Patin v New York State Dept. of Educ., 174 AD3d 1080, 1081 [3d Dept 2019]). "The burden of proof is on the applicant to present evidence so ineluctable in its implications that it would compel affirmative action from a Board which has discretion to restore or to refuse to restore" (Matter of Nehorayoff v Mills, 95 NY2d at 675 [internal quotation marks and citation omitted]; accord Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1081). "As long as the Board's determination is supported by a rational basis, and is neither arbitrary nor capricious, it will not be disturbed" (Matter of Chalasani v Elia, 181 AD3d at 1067 [internal quotation marks and citations omitted]).
Underlying their respective negative recommendations, both the Peer Committee and COP concluded that petitioner had failed to demonstrate the necessary reeducation, rehabilitation and remorse for the conduct that resulted in his license being revoked. Notably, petitioner's revocation stemmed from numerous acts of fraud and negligence that exposed him to several criminal proceedings.[FN2] To that end, both the Peer Committee and COP found that petitioner did not appreciate the severity of his wrongdoing and continued to insist that his conduct did not harm any patients, despite the contrary OPMC findings during his revocation proceedings. To the extent that petitioner disputes the findings from the original proceeding that resulted in the revocation of his license, those arguments may not be properly raised on this appeal (see id.). Further, both the Peer Committee and COP noted petitioner's extended absence from the practice of medicine and concern over his efforts to maintain his acumen over that time. Although the Peer Committee found that petitioner's work in the community since the time of revocation was admirable,[FN3] such proof did not outweigh the aforementioned negative factors militating in favor of denial. All told, we find that the conclusions of the Peer Committee and COP, and consequently the Board, articulate a rational basis for denying petitioner's application for restoration, and there is no indication that such a determination is arbitrary or capricious (see id. at 1068; Matter of Dutta v Mills, 301 AD2d 775, 777 [3d Dept 2003]; Matter of Greenberg v Board of Regents of Univ. of State of N.Y., [*4]176 AD2d at 1169; see also Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1081-1082). Petitioner's remaining contentions, to the extent not explicitly addressed herein, have been examined and found unavailing.
Egan Jr., J.P., Aarons, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: The Hearing Committee's revocation and penalty were later affirmed by this Court (see Matter of Corines v State Bd. for Professional Med. Conduct, 267 AD2d 796, 800 [3d Dept 1999], lv denied 95 NY2d 756 [2000]).

Footnote 2: Although the Peer Committee and COP appear to have mistakenly characterized one of petitioner's convictions as a second offense for facilitating the unauthorized practice of medicine rather than a violation of probation, that error does not warrant a different outcome (see Matter of Chalasani v Elia, 181 AD3d at 1067).

Footnote 3: Petitioner argues that COP unfairly considered the fact that he had pleaded guilty and was subsequently convicted in March 2019 of grand larceny in the second degree, attempted grand larceny in the second degree and identity theft in the first degree; specifically, he notes that the convictions came after COP had issued its draft report in June 2018 (see People v Corines, 204 AD3d 827 [2d Dept 2022], lv denied 38 NY3d 1132 [2022], cert denied ___US___, 143 S Ct 741 [2023]). Notably, COP's recommendation makes clear that it did not consider the conviction as part of its determination. In any event, it is notable that petitioner had highlighted his work with the victim of said offenses to COP in support of his application by referring to his relationship with her as a part of his community service efforts. Accordingly, such evidence is clearly relevant to the Board's consideration as to whether restoration of petitioner's license would create a risk of harm to the public (see generally Matter of Morrissey v State Educ. Dept., 246 AD2d 817, 818 [3d Dept 1998]), and, further, petitioner was afforded an adequate opportunity to respond to COP's inquiry (see Matter of Horoshko v Ambach, 122 AD2d at 448).