Matter of Gabriel v University of the State of N.Y., State of Educ. Dept. (2025 NY Slip Op 01845)

Matter of Gabriel v University of the State of N.Y., State of Educ. Dept.

2025 NY Slip Op 01845

Decided on March 27, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 27, 2025

CV-23-2054
[*1]In the Matter of Demetrios Gabriel, Appellant,
v
University of the State of New York, State Education Department, Respondent.

Calendar Date:January 7, 2025

Before:Clark, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Marvin S. Robbins, Garden City, for appellant.
Letitia James, Attorney General, Albany (Alexandria Twinem of counsel), for respondent.

McShan, J.
Appeal from a judgment of the Supreme Court (Anthony McGinty, J.), entered September 28, 2023 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to review a determination of the Commissioner of Education denying petitioner's request to restore his license to practice medicine.
Petitioner was licensed to practice medicine in New York in 1997; however, his license was voluntarily surrendered in 2015 after petitioner was convicted of federal racketeering charges stemming from his acceptance of bribes in return for referring patients' blood samples to a particular laboratory. Petitioner was sentenced to 37 months in prison and was released after about 22 months for good behavior. Petitioner also forfeited $200,000 and paid a $75,000 fine. After petitioner served his sentence, he applied with respondent's Office of the Professions, Division of Professional Licensing Services to have his medical license restored. Respondent's Peer Committee performed the first level of review and, after an informal hearing, recommended that execution of the surrender of petitioner's medical license be stayed subject to a two-year probationary period, which, if successfully completed, would lead to restoration of his license. Respondent's Committee on the Professions (hereinafter the COP) subsequently reviewed petitioner's application and a majority recommended against restoring his medical license. In a December 2022 determination, the Board of Regents (hereinafter the Board) voted to adopt the COP majority recommendation to deny petitioner's restoration application and the Commissioner of Education thereafter issued an order to that effect in February 2023. Petitioner then commenced this CPLR article 78 proceeding seeking review of the Commissioner's determination, arguing, among other things, that it was arbitrary and capricious. Supreme Court disagreed and dismissed the petition, and petitioner appeals from that determination.
We affirm. "Education Law §§ 6510 and 6511 vest the Board of Regents with considerable discretion concerning matters of professional misconduct, including the revocation and restoration of medical licenses. Indeed, restoration of such licenses is permissive and is granted only in rare cases where the merit of the applicant is clearly established to the satisfaction of the Board. The burden of proof is on the applicant to present evidence so ineluctable in its implications that it would compel affirmative action from a Board which has discretion to restore or to refuse to restore. In exercising that discretion, the Board is not required to weigh or consider any particular factors. As long as the Board's determination is supported by a rational basis, and is neither arbitrary nor capricious, it will not be disturbed" (Matter of Nehorayoff v Mills, 95 NY2d 671, 674-675 [2001] [internal quotation marks, brackets and citations omitted]; see Matter of Chalasani v Elia, 181 AD3d 1066, 1067 [3d Dept [*2]2020], lv denied 36 NY3d 901 [2020]; Matter of Patin v New York State Dept. of Educ., 174 AD3d 1080, 1081 [3d Dept 2019]).
Initially, we reject petitioner's contention that the COP and, consequently, the Board, relied upon improper evidence in their determination; specifically, a letter from the Department of Health's Office of Professional Medical Conduct indicating that it opposed petitioner's application. The letter contains nothing more than a recitation of the circumstances that precipitated petitioner surrendering his license and, based upon the reasoning provided in respondent's determination, there is no indication that the substance of the letter played any role. We also reject petitioner's argument that the absence of a transcript of the informal hearing before the COP warrants remittal, as "the pertinent regulations do not require that a transcript be made of proceedings conducted in connection with an application for reinstatement or restoration of a license" (Matter of Greenberg v Board of Regents of Univ. of State of N.Y., 176 AD2d 1168, 1169 [3d Dept 1991]).
As to the merits, the crux of the COP recommendation rested on its finding that petitioner had "not demonstrate[d] sufficient remorse, rehabilitation[ ] or reeducation." That determination differed from that of the Peer Committee, and petitioner's brief places significant reliance on that divergence. However, that reliance is misplaced, as neither the COP nor the Board were bound by the Peer Committee's findings and recommendations (see Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1082; see also Matter of Nisnewitz v Board of Regents of Univ. of State of N.Y., 95 AD2d 950, 951 [3d Dept 1983]). To that end, there is nothing that prohibited the COP from forming a different conclusion regarding the sincerity of petitioner's remorse and his understanding of the severity of his criminal behavior both from its observations and its assessment of the record before it. The COP majority based that finding on its impression that petitioner's stated remorse was predicated on his embarrassment and that he seemingly minimized his felony conduct — which consisted of accepting kickbacks for sending liters of his patients' blood to a specific laboratory and accepting further payments from the laboratory for using his family's restaurant for meetings — by characterizing it as a "lapse in judgment." The COP also noted that petitioner appeared to deflect blame onto the laboratory for his criminal conduct and, in that respect, failed to "grasp and accept the motive" for his actions. Although the COP lauded petitioner's efforts to stay current and sustain his professional ability as well as his volunteer work in his community, it did not find petitioner sufficiently sincere as to his remorse, thus concluding that he had failed to put on a sufficiently compelling case in support of his application. All told, the findings in COP's report, as adopted by the Board, rationally support the [*3]denial of petitioner's application (see Matter of Chalasani v Elia, 181 AD3d at 1068; Matter of Chaudry v Mills, 285 AD2d 849, 850 [3d Dept 2001]; Matter of Morrissey v State of N.Y. Educ. Dept., 246 AD2d 817, 818 [3d Dept 1998]).
Finally, petitioner's argument that the determination is arbitrary and capricious inasmuch as three other individuals involved in the same criminal conduct as him have successfully regained their ability to practice is unavailing. The administrative determinations regarding these individuals dealt with the initial suspension of their medical licenses, not restorations after surrender. Thus, the lines of legal and factual inquiry between petitioner's case and the other individuals are materially distinct (compare Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1081, with Matter of Hason v Department of Health, 295 AD2d 818, 823 [3d Dept 2002]). Further, distinguishable from the proceedings concerning those individuals, the Board, adopting the COP's findings, determined that petitioner had not demonstrated sufficient remorse for his actions. Noting that distinction, we are cognizant that restoration is granted only in rare cases (see Matter of Nehorayoff v Mills, 95 NY2d at 674) and the exercise of discretion in determining what applications meet that high standard "reposes in [the Board] and not in the courts" (Matter of Greenberg v Board of Regents of Univ. of State of N.Y., 176 AD2d at 1169; see Matter of Morrissey v State of N.Y. Educ. Dept., 246 AD2d at 818; Matter of Nisnewitz v Board of Regents of Univ. of State of N.Y., 95 AD2d at 951). Thus, although we are mindful of the concerns of our dissenting colleague, we do not find it appropriate to substitute our judgment for that of the COP and the Board, who ultimately are entitled to assess the sincerity of petitioner's remorse firsthand (see Matter of Nehorayoff v Mills, 95 NY2d at 675).[FN1] Accordingly, as we have determined that the Board's determination is supported by a rational basis and is not arbitrary and capricious, we affirm the judgment of Supreme Court. Petitioner's remaining contentions, to the extent not addressed explicitly, have been reviewed and found unavailing.
Clark, J.P., Ceresia and Powers, JJ., concur.
Reynolds Fitzgerald, J. (dissenting).
I respectfully dissent. The facts surrounding the matter before us are not at issue. Four physicians pleaded guilty to participating in an illegal scheme whereby they received "kickbacks" for utilizing a specific laboratory for their blood draws. All received generally similar sentences; petitioner was sentenced to 37 months incarceration and served 22 of those months, forfeited $200,000 and paid a $75,000 fine. Three of the physicians chose not to voluntarily surrender their licenses, but rather were subject to disciplinary hearings under Public Health Law § 230. These physicians had their licenses suspended subject to their completion of their periods of incarceration and were issued various [*4]periods of probation with specific conditions. Conversely, upon his sentencing, petitioner voluntarily surrendered his license to practice medicine. This decision, while arguably a reflection of petitioner taking responsibility for his actions, has proven unwise. Now, in order to get his license back, petitioner is subject to nebulous standards of Education Law §§ 6510 and 6511 which, as I acknowledge, vest the Board of Regents (hereinafter the Board) with considerable discretion in matters of restoration of licenses and puts the burden on petitioner to present evidence that would compel affirmative action (see Matter of Patin v New York State Dept. of Educ., 174 AD3d 1080, 1081 [3d Dept 2019]). Moreover, I agree that the Board is not required to weigh or consider any particular factors, although it is generally acknowledged that the applicant's reeducation, rehabilitation, remorse, the seriousness of the original offense and the public's safety, are among the most common and significant factors the Board focuses on (see Matter of Chalasani v Elia,181 AD3d 1066, 1067 [3d Dept 2020], lv denied 36 NY3d 901 [2020]). That said, while the standard is broad and more than a bit vague, the Board's determination is still subject to the requirement that it be supported by a rational basis and be neither arbitrary nor capricious (see Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1081). In other words, it cannot be an action taken without a sound basis in reason or regard to the facts (see Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 961 [3d Dept 2024]).
Here, the majority finds that the Board — in its determination denying restoration of petitioner's license — has met that standard. I disagree. Initially, while I recognize that the Board is not bound by either the recommendation of the Peer Review Committee or the Committee on the Professions (hereinafter the COP), and in fact is entitled to make its own independent determination (see Matter of Patin v New York State Dept. of Educ., 174 AD3d at 1081), it did not do so here. Rather, in its one-paragraph decision, the Board specifically rejected the unanimous recommendation of the Peer Review Committee, and adopted the majority (2-1) recommendation of the COP. In so doing, it rejected the recommendation of the hearing that was had, wherein witnesses were called, and a transcript was produced, in favor of the results of an informal interview, of which we have no transcript. I find this is logically problematic, albeit I concede that there is no requirement that a transcript be made (see Matter of Greenberg v Board of Regents of Univ. of State of N.Y., 176 AD2d 1168, 1169 [3d Dept 1991]). What I cannot concede is that the articulated reasoning of the amorphous COP report, the purported wellspring for the rational basis of the Board's decision, provides anything close to a rational basis for its action. For instance, the COP's report [*5]on more than one occasion faults petitioner for failure to seek mental health counseling, although there is nothing in the record to demonstrate that this was ever mandated or needed. Furthermore, the COP does acknowledge that petitioner spoke with his priest throughout this process; however, the COP apparently finds this counseling inadequate, as its report concludes petitioner is unable to "identify the root cause for what he did." It seems to me that this is a classic example of shifting the goal post — a practice that is anything but rational. Other reasons given by the COP for denying petitioner's license include its conclusion that he had not demonstrated adequate remorse as, in its opinion, he was unable to grasp and accept the motive for his crime (which the COP evidently had determined) and that his remorse centered around the embarrassment the conviction caused him and his family,[FN2] an apparently inadequate reason for remorse. Finally, the COP faulted petitioner because he referred to his actions as a "lapse in judgment." Despite these damning conclusions, the COP never provides a foundation for its determinations; in fact, it entirely fails to articulate what exactly, in its consideration, constitutes sufficient remorse. Absent said foundation, or at the very least expert psychological examiners qualified to opine on petitioner's state of mind, these conclusions, such as they are, are quintessentially arbitrary and capricious and certainly do not provide a rational basis for the Board's actions (see Matter of Melone v State of N.Y. Educ. Dept., 182 AD2d 875, 878 [3d Dept 1992]). As such, I would remit the matter to the Board for further consideration of petitioner's application.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Our dissenting colleague emphasizes petitioner's statement that his actions were a regrettable "mistake," which he indeed stated on various occasions during his appearance before the Peer Committee. However, the Peer Committee also stated in its findings that petitioner offered no reason as to why he engaged in the three-year bribery scheme that led to the surrender of his license and that he had done so despite the lack of any financial necessity (compare Matter of Melone v State of N.Y. Educ. Dept., 182 AD2d 875, 878 [3d Dept 1992]). That finding was later substantially echoed in the COP majority determination. Ultimately, although reasonable minds might differ as to whether petitioner's characterization of his years-long conduct as a lapse in judgment or mistake were sufficiently contrite, that does not render the determination of the COP irrational. 

Footnote 2: This stands in stark contrast to the remorse shown by petitioner at the peer review hearing (a transcript of which is included in the record), wherein he repeatedly expressed his remorse and stated it "was a mistake that I regret to this day."