■ In the Matter of RALPH S. BELL, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [738 NYS2d 137] —Cardona, P.J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which suspended petitioner's license to practice medicine in New York.

Petitioner is a licensed physician practicing family medicine in Middle Village, Nassau County. Following receipt of a complaint concerning one of petitioner's patients (hereinafter patient A), an investigation was conducted by the Office of Professional Medical Conduct (hereinafter OPMC) of the State Board for Professional Medical Conduct (hereinafter Board). On October 13, 2000, six specifications of professional misconduct were filed against petitioner by the Bureau of Professional Medical Conduct (hereinafter BPMC) alleging two specifications of gross negligence, gross incompetence, negligence on

more than one occasion, incompetence on more than one occasion and neglecting a patient, all in reference to his care of patient A. Specifically, the BPMC charged that petitioner failed to properly treat and respond to patient A's evolving emergency cardiac condition despite symptoms and circumstances indicating the need for immediate hospitalization. Petitioner denied the allegations and, on January 12, 2001, the Hearing Committee of the State Board for Professional Medical Conduct (hereinafter the Committee) conducted a hearing.

Evidence from the hearing revealed that patient A received primary medical care services from petitioner from September 1994 through June 1997. When patient A visited petitioner in September 1994, he was suffering from high blood pressure and taking medication for that condition. From 1994 to 1996, patient A, who met the criteria for obesity, treated with petitioner for various medical conditions, including high cholesterol and hypertension. On May 29, 1997, patient A visited petitioner complaining of chest pains, anxiety panic attacks and shortness of breath. During that visit, petitioner performed an EKG, ordered chest X-rays and referred patient A to a cardiac specialist for consultation. Petitioner also ordered a test for cardiac enzymes, however, the results were not available for several days. Petitioner prescribed asthma medication and sent patient A home. Following that visit, petitioner tried to call patient A the next day to inquire about his condition but was unable to reach him. Within less than a week, on June 2, 1997, patient A returned to petitioner's office complaining of continued chest pain. At that time, petitioner arranged a visit with the cardiologist for the same day. The cardiologist reviewed patient A's medical history, performed an EKG, reviewed the May 29, 1997 EKG and concluded that patient A had "a myocardial infarction followed by post-infarction angina." Patient A was immediately sent to the hospital.

Petitioner, who was not present at the hearing, did not call any witnesses to rebut BPMC's expert witness, Maury Greenberg, who opined, inter alia, that petitioner's response to patient A's symptoms on May 29, 1997 and June 2, 1997 failed to meet medically acceptable standards of care. On February 21, 2001, the Committee sustained the charge of negligence on more than one occasion and dismissed all other charges. Petitioner's license was suspended for two years, however, the suspension was stayed and petitioner was placed on probation.

In this CPLR article 78 proceeding, petitioner maintains that the Board lacked jurisdiction over the matter. Specifically, petitioner points out that, during the initial consideration of

the allegations of professional misconduct against him, the Director of OPMC, after consulting with OPMC's investigative committee, issued a "comprehensive review order" on January 3, 2000 directing examination of petitioner's patient and office records pursuant to Public Health Law § 230 (10) (a) (iv). In doing so, the Director checked off one of the factors listed as necessary for triggering such a review, namely, that "evidence exists of a single incident of negligence or incompetence" (Public Health Law § 230 [10] [a] [iv] [A]). Since a single incident of negligence is insufficient to constitute professional misconduct pursuant to Education Law § 6530 (3), petitioner argues that the language in the comprehensive review order precluded the Board from thereafter filing charges against him. We do not agree. The requirements for initiating a record review are clearly set forth so that there is a sufficient basis for examining records and the physician under investigation is not the subject of a "fishing" expedition. Any argument that the Board cannot thereafter use the results of the review as the basis for later charges is neither logical nor consistent with the statute.

Turning to the merits, the scope of this Court's review of the Committee's determination is whether it is supported by substantial evidence (see, Matter of Singer v Novello, 288 AD2d 777, 777; Matter of Reddy v State Bd. for Professional Med. Conduct, 259 AD2d 847, 849, lv denied 93 NY2d 813). Here, the record discloses that when patient A visited petitioner on May 29, 1997 complaining of chest pains, patient A had documented risk factors for cardiac disease, which included the results of a 1994 EKG, high cholesterol, obesity and high blood pressure. According to Greenberg, petitioner's course of conduct in performing an EKG, ordering a cardiac enzyme test and referring patient A to a cardiologist demonstrated that petitioner suspected that patient A was experiencing cardiac problems. However, given patient A's symptoms and history, it was Greenberg's opinion that petitioner failed to adhere to medically acceptable standards of treatment by, inter alia, failing to obtain the results of the cardiac enzyme test expeditiously and not referring patient A to an emergency room immediately. Based upon Greenberg's opinion, the Committee concluded that petitioner was negligent on that occasion. The Committee found that petitioner's second act of negligence occurred during the June 2, 1997 visit, when he failed to perform another EKG to determine the severity of patient A's condition and simply referred him to a cardiologist rather than to the hospital. Given, inter alia, the serious nature of patient A's complaints and symptoms and the potential consequences, the Committee's conclusions are supported by substantial evidence and must be affirmed.

We have examined petitioner's remaining arguments and find them to be unpersuasive.

Mercure, Peters, Carpinello and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.