In the Matter of EVANGELOS A. CATSOULIS, Petitioner, v NEW YORK STATE DEPARTMENT OF HEALTH et al., Respondents. [767 NYS2d 526]—

Kane, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of the State Board for Professional Medical Conduct which revoked petitioner's license to practice medicine in New York.

The Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner with professional misconduct arising from his treatment of one patient, alterations to that patient's records, and false statements on two applications for hospital privileges. A Hearing Committee of the State Board for Professional Medical Conduct sustained the charges that petitioner practiced the profession with gross negligence, gross incompetence and fraudulently, and failed to maintain accurate patient records. As a result, the Committee revoked petitioner's medical license. Petitioner instituted this CPLR article 78 proceeding to annul the Committee's determination. We confirm.

Our inquiry is limited to whether the Committee's determination was supported by substantial evidence (*see Matter of Mayer v Novello*, 303 AD2d 909, 910 [2003]; *Matter of Reddy v State Bd. for Professional Med. Conduct*, 259 AD2d 847, 849

---

[1999], *lv denied* 93 NY2d 813 [1999]). In reviewing the evidence, credibility issues are exclusively determined by the Committee (*see Matter of Pearl v New York State Bd. for Professional Med. Conduct*, 295 AD2d 764, 765 [2002], *lv denied* 99 NY2d 501 [2002]; *Matter of Corines v State Bd. for Professional Med. Conduct*, 267 AD2d 796, 798-799 [1999], *lv denied* 95 NY2d 756 [2000]). The record demonstrates that petitioner neglected his obligation to fully evaluate his patient's condition and progress throughout a 2½-week hospital stay by failing to properly review his patient's hospital records, to manage his patient's anticoagulant therapy or to review what medications his patient was on prior to changing medications. In this regard, petitioner substantially increased his patient's risk of hemorrhaging, which ultimately led to his death, by repeatedly failing to notice that the patient was on aspirin and two prescription anticoagulant medications simultaneously. In addition, he failed to monitor his patient, demonstrating a reckless disregard for the patient's welfare. Finally, petitioner failed to acknowledge that giving three anticoagulant medications simultaneously fell below accepted medical standards, a fact which all the experts agreed upon and BPMC characterized as basic medicine. Regardless of any mistakes which may have been made by interns, nurses or the hospital pharmacy, petitioner, as attending physician, was ultimately responsible for the care of his patient. Both BPMC's and petitioner's experts testified that petitioner deviated from accepted standards of medical care in regard to his treatment of this patient, supporting the findings of practicing the profession with gross negligence and gross incompetence.

The fraud and medical record charges were also supported by substantial evidence. Where an explanation for fraudulent misrepresentations is found incredible, the Committee may properly draw an inference of intent to deceive (*see Matter of Corines v State Bd. for Professional Med. Conduct, supra* at 800). It is undisputed that petitioner falsely answered questions regarding a criminal conviction on two applications for hospital privileges. The Committee specifically labeled petitioner's explanation for these false answers "contrived and not believable." Petitioner further committed fraud by making material alterations to the patient's medical records after the patient died, without indicating that the notes were added at a later date. The alterations were made intentionally and deliberately, and in a manner that would avoid detection and also cast blame on others for petitioner's actions. As such, petitioner's conduct is also sufficient to sustain the charge of failing to maintain medical records in accordance with accepted medical standards.

Given all these actions, the revocation of petitioner's license is not "so incommensurate with the offense as to shock one's sense of fairness" (*Matter of Jean-Baptiste v Sobol*, 209 AD2d 823, 825 [1994]; *see Matter of Mayer v Novello, supra* at 910).

Crew III, J.P., Mugglin, Rose and Lahtinen, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.