■ In the Matter of SAFWAT ATTIA YOUSSEF, Petitioner, v STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [775 NYS2d 395]—

Mugglin, J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which revoked petitioner's license to practice medicine in New York.

The Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner, an orthopedic surgeon, with 28 specifications of professional misconduct relating to 10 patients. After the Hearing Committee's original decision was remanded to it by the Administrative Review Board for Professional Medical Conduct, the Committee corrected certain inconsistencies and issued an amended determination which sustained 14 specifications. Petitioner's license to practice medicine was revoked and he instituted this proceeding to challenge the Committee's amended determination.

Petitioner essentially makes three challenges to the Committee's determination. The first, although made in a variety of legal arguments, essentially challenges the Committee's factual findings as unsupported by substantial evidence. "[T]he standard for reviewing a hearing committee's determination is whether it was supported by substantial evidence" (*Matter of Ticzon v New York State Dept. of Health*, 305 AD2d 816, 817 [2003]). In this regard, "the assessment and resolution of conflicting evidence and witness credibility are within the exclusive province of the Hearing Committee" (*Matter of Singer v Novello*, 288 AD2d 777, 777 [2001]). Guided by these principles, we turn to petitioner's first substantial evidence challenge which concerns the Committee's finding of inadequate medical record keeping. "A medical record that fails to convey objectively meaningful medical information concerning the patient treated to other physicians is inadequate" (*Matter of Mucciolo v Fernandez*, 195 AD2d 623, 625 [1993], *lv denied* 82 NY2d 661 [1993] [citations omitted]; *see Matter of Schoenbach v DeBuono*, 262 AD2d 820, 822 [1999], *lv denied* 94 NY2d 756 [1999]). Such an inadequate medical record may also support a finding of negligence on more than one occasion in the event that "there is a relationship between inadequate record-keeping and patient treatment" (*Matter of Bogdan v New York State Bd. for Professional Med. Conduct*, 195 AD2d 86, 89 [1993], *appeal dismissed and lv denied* 83 NY2d 901 [1994]). Given the minimal nature of petitioner's records, which often omitted important patient history, examination results and procedures performed by petitioner, petitioner is incorrect in his assertion that substantial evidence does not support the Committee's finding of inadequate record keeping that would rise to the level of negligence.

Equally lacking in merit are defendant's substantial evidence challenges to the other findings of negligence and to the findings of fraud. With respect to negligence, the record amply supports a finding that petitioner (1) performed an unwarranted

arthroscopy on patient A's knee when one had been performed only a few months before and an MRI of the knee existed, (2) was negligent in failing to order X rays for patient E on two occasions and failed to provide adequate aftercare, (3) operated on the wrong finger of patient F, and (4) failed, with respect to patient H, to perform a culture on a hemarthrosis of the knee and failed to perform a bone scan and indium or gallium scan, biopsy or MRI or CT scan for this patient's osteomyelitis. To prove fraud, it must be established that there was an "intentional misrepresentation or concealment of a known fact without the requirement that the fraud caused an injury to a patient or a benefit to the doctor" (*Matter of Mayer v Novello*, 303 AD2d 909, 910 [2003]). Substantial evidence exists that petitioner billed patient A twice for his knee replacement and he billed the same patient for a hospital visit on the day after he was discharged. In addition, petitioner was convicted of a class C misdemeanor and was knowingly involved in 12 malpractice lawsuits and did not fully disclose these in applications to Empire Blue Cross and Blue Shield Managed Care Networks on three occasions. Thus, substantial evidence supports the fraud findings.

Petitioner's second major argument is that the Committee improperly drew a negative inference based on his failure to testify as to patient A or patient F and, on charge I, as his failure to testify was not a refusal, but rather a belief on his attorney's part that the BPMC had failed to establish a prima facie case on those charges. Petitioner further argues that he did not invoke his 5th Amendment rights, but merely objected to the scope of the inquiry. Again, petitioner is incorrect. An adverse inference may be drawn when a physician charged with professional medical misconduct neither appears, testifies nor offers evidence on his behalf, even in the absence of the assertion of a 5th Amendment privilege (*see Matter of Steiner v DeBuono*, 239 AD2d 708, 710 [1997], *lv denied* 90 NY2d 808 [1997]). Moreover, when petitioner's attorney objected to the Committee's questioning of petitioner on some of the issues that he failed to discuss on direct examination, the BPMC's counsel warned that petitioner's choice not to explain could give rise to a negative inference. In any event, substantial evidence supports the findings, even in the absence of a negative inference.

Petitioner's third and final argument is that the penalty of license revocation was harsh and excessive. Given petitioner's negligent behavior, poor record keeping and fraud, "the penalty of license revocation is [not] 'so incommensurate with the offen-

se[s] as to shock one's sense of fairness' " (*Matter of Mayer v Novello, supra* at 910, quoting *Matter of D'Amico v Commissioner of Educ. of State of N.Y.*, 167 AD2d 769, 771 [1990]).

Peters, J.P., Spain, Lahtinen and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.