■ In the Matter of CHAGGRIT SAWANGKAO, Petitioner, v NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [783 NYS2d 716]—

Spain, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in New York County) to review a determination of the Hearing Committee of respondent which revoked petitioner's license to practice medicine in New York.

Following an investigation, the Bureau of Professional Medical Conduct charged petitioner, a licensed physician, with five specifications of professional misconduct. The charges allege that petitioner practiced the profession fraudulently, engaged in conduct evincing moral unfitness to practice the profession and exercised undue influence on a 93-year-old patient (hereinafter patient A), now deceased, in such a manner as to exploit her for his own financial gain (*see* Education Law § 6530 [2], [17], [20]). Following a hearing, a Hearing Committee of respondent sustained the charges, revoked petitioner's license and imposed a civil penalty of $30,000. Petitioner instituted this CPLR article 78 proceeding to annul the determination and reduce the penalty, and we confirm in all respects.

Upon review of the record and evidence, we find that the Committee's determination is supported by substantial evidence (*see Matter of Catsoulis v New York State Dept. of Health*, 2 AD3d 920, 921 [2003]; *Matter of Bell v New York State Dept. of Health*, 291 AD2d 744, 746 [2002]). In so concluding, we defer to the Committee's assessment of witness credibility and resolution of conflicting evidence, which are fully supported by the record (*see Matter of Catsoulis v New York State Dept. of Health, supra; Matter of Singer v Novello*, 288 AD2d 777, 777 [2001]).

Evidence from the hearing overwhelmingly demonstrated that

when petitioner treated patient A for open sores on her feet on May 9, 1997 and again during a home visit the next day, he requested and obtained two blank, signed personal checks from her, telling her that he did not know the amounts owed for lab tests at that time; he thereafter made the first check payable to himself for $950 and cashed it at a restaurant, and made the second payable to a travel agency in the amount of $4,500. Patient A did not learn the amounts of the checks until her bank statement arrived. Patient A's son, who properly testified to conversations with her about what had occurred (see *Matter of Coderre v DeBuono*, 247 AD2d 793, 794 [1998]), recounted that when contacted, petitioner admitted overcharging patient A, explaining he needed to make a trip abroad to see a terminally ill relative, and agreed to return all of the money. Petitioner eventually refunded $4,000 to patient A. Petitioner also admitted this misconduct in an interview with a medical conduct investigator for the Office of Professional Medical Conduct (hereinafter OPMC). This testimony, credited by the Committee, constitutes substantial evidence to sustain the charges that petitioner practiced medicine fraudulently, evinced moral unfitness and exercised undue influence on patient A (see Education Law § 6530 [2], [17], [20]).

Petitioner's contentions that the Committee ignored the facts and failed to credit his testimony lack merit. When petitioner testified, he admitted obtaining and filling in the blank checks, and his reasons for doing so and for refunding the money were properly rejected as untrue, implausible and irrelevant. The Committee justifiably concluded that his testimony was deceitful and inconsistent, as when he testified that patient A signed the checks on May 18, 1997, her last appointment, when he presented her with an itemized bill, which was flatly contradicted by her bank statement reflecting that the checks had been presented on May 12, 1997. The Committee also determined that after submitting certified medical records for patient A to OPMC, petitioner created and introduced into evidence at the hearing fictitious medical records for patient A, claiming that they were a "copy" of her patient records, which contained altered notes pertaining to diagnosis and treatments and, for the first time, a copy of the itemized bill reflecting charges for services that were never rendered.

With regard to the remaining specifications that petitioner practiced medicine fraudulently and evinced moral unfitness, the OPMC investigator testified that when questioned during the second interview, petitioner misrepresented that he was a board-certified surgeon, that he had privileges at a specified

hospital and that he practiced in partnership with a certain physician, all of which he later retracted as untrue. The Committee's determination to credit this testimony and discredit petitioner's denials was eminently rational and will not be disturbed (*see Matter of Singer v Novello, supra* at 778) and the inference of intent to deceive was inescapable (*see Matter of Catsoulis v New York State Dept. of Health, supra* at 921).

Given petitioner's actions—with regard to patient A, during the investigatory interview and at the hearing—we do not find that revocation of petitioner's license and penalty is " 'so incommensurate with the offense[s] as to shock one's sense of fairness' " (*id.* at 922, quoting *Matter of Jean-Baptiste v Sobol,* 209 AD2d 823, 825 [1994]).

Carpinello, Mugglin, Rose and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.