■ In the Matter of ALLEN C. CHAMBERLIN, Petitioner, v NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent. [825 NYS2d 172]—

Mercure, J.P. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Hearing Committee of respondent which, inter alia, revoked petitioner's license to practice medicine in New York.

Petitioner was a physician and orthopedic surgeon with approximately 50 years of experience. In July 2004, the Bureau of Professional Medical Conduct (hereinafter BPMC) charged petitioner with 21 specifications of professional misconduct based on his treatment of eight patients who had been involved in automobile accidents. Petitioner had performed knee and shoulder surgeries on six of the patients and administered epidural blocks for pain to the remaining two patients. The charges included five counts of fraudulent practice, five counts of making a false report, eight counts of failure to maintain accurate medical records, moral unfitness, negligence and incompetence. Although it found insufficient proof to sustain the charge of incompetence and two charges each of fraudulent practice and making a false report, a Hearing Committee of respondent ultimately sustained 16 of the 21 specifications. The Hearing Committee revoked petitioner's medical license and imposed a $30,000 fine. Petitioner then commenced this CPLR article 78 proceeding challenging the Hearing Committee's determination.

The standard for reviewing a determination of a hearing committee of respondent is whether it was supported by substantial evidence (*see Matter of Youssef v State Bd. for Professional Med. Conduct*, 6 AD3d 824, 825 [2004]; *see also Matter of Sawangkao v New York State Bd. for Professional Med. Conduct*, 12 AD3d 735, 735 [2004], *lv denied* 4 NY3d 704 [2005]; *Matter of Kessler v State Bd. for Professional Med. Conduct*, 7 AD3d 842, 844 [2004]). Moreover, " 'the assessment and resolution of conflicting evidence and witness credibility are within the exclusive province of the Hearing Committee' " (*Matter of Youssef v State Bd. for Professional Med. Conduct, supra* at 825, quoting *Matter of Singer v Novello*, 288 AD2d 777, 777 [2001]). With these principles in mind, we conclude that the determination, to the extent that respondent has not conceded otherwise, is supported by substantial evidence.

Petitioner first challenges the Hearing Committee's finding that he failed to perform repairs to the anterior cruciate ligaments (hereinafter ACLs) of patients A, B and D. The Hearing Committee relied upon this finding and a related determination that petitioner made false diagnoses of torn ACLs in patients A and D to sustain the charges of fraudulent practice, filing false reports and moral unfitness. With respect to all three patients, the Hearing Committee based its determination upon the fact that MRIs did not show the patients' ACLs to be torn and that petitioner's operative reports show only a debridement, or removal, of scar tissue. The finding with respect to the operative reports was supported by the testimony of BPMC's expert explaining the differences between ACL repair and the removal of scar tissue, and that the length of time spent on the procedures was consistent with the removal of scar tissue but insufficient for an ACL repair. While petitioner challenges the accuracy of MRIs in these circumstances, both his expert and BPMC's expert testified that the success rate of MRIs in detecting partial tears of ACLs is greater than 50%. The Hearing Committee rejected petitioner's claims that he performed the ACL repairs with a procedure involving heat shrinkage as lacking in credibility. In addition, with respect to patients A and B, the Hearing Committee noted that there were no special reports on the knee and either no discussion with the patient about an ACL repair prior to surgery or no references to a torn ACL in the preoperative diagnosis. In our view, the evidence cited by the Hearing Committee is substantial and supports its determination of guilt on specifications 1, 2, 3, 8, 9, 10 and 13, as well as the related charges of fraudulent practice, filing false reports and moral unfitness (*see* Education Law § 6530 [2], [20], [21]).

Petitioner asserts that the Hearing Committee overlooked

medical reports in stating that there was nothing in patient A's record regarding a Lachman test or pivot shift test supporting a clinical diagnosis of a torn ACL. Contrary to petitioner's argument that a positive Lachman sign was found and documented for patients A, B and D, a review of the relevant records reveals that a positive sign was found for only one of the patients. In addition, although the Hearing Committee erroneously referred to "loose pieces" of the knee in analyzing whether an ACL repair was performed on patients A and B, the Hearing Committee properly recognized in its findings of fact that testimony regarding loose pieces was related to a separate procedure—abrasion arthroplasty. We conclude that the Hearing Committee's carelessness in referring to loose pieces in the context of ACL repair does not negate the substantial evidence supporting its findings or require reversal of the determination of guilt. Similarly, while factual allegation 2—alleging that petitioner made a false diagnosis that required patient A to undergo and pay for unnecessary shoulder surgery—mislabeled the type of fracture actually diagnosed, testimony during the hearings provided substantial evidence for the Hearing Committee's finding that patient A had not experienced recurrent dislocations of the shoulder warranting surgery.

Turning to the remaining charges, we further conclude that substantial evidence exists to support the Hearing Committee's determination of negligence based on petitioner's performance of unnecessary medical procedures on all of the listed patients' knees or shoulders. Petitioner's claims, that in at least some of the instances similar procedures were performed, are contradicted both by his operative notes and the testimony of the witnesses, including petitioner's own experts. Indeed, petitioner concedes that one type of procedure—a notchplasty—would not have been warranted in the absence of an ACL repair and, as noted above, the Hearing Committee properly concluded that ACL repairs were never performed. Regarding the remaining procedures, it was within the Hearing Committee's province to reject petitioner's current claims as unconvincing and credit instead his contemporaneous operative reports and the testimony of the medical experts that the procedures actually performed were not medically indicated (*see Matter of Moore v State Bd. for Professional Med. Conduct*, 258 AD2d 837, 838 [1999]; *Matter of 882 E. 180th St. Drug Corp v New York State Educ. Dept.*, 192 AD2d 749, 749-750 [1993]).

Finally, we are not persuaded by petitioner's challenge to the Hearing Committee's finding that he kept inadequate records with respect to the procedures discussed above, particularly in

light of his repeated concessions that he used loose terminology and inaccurate or misleading nomenclature. We note, however, respondent's concession that there is not substantial evidence to sustain allegations A1, B1, D1, G1 and H1 charging petitioner with failure to perform and note a complete examination. These allegations formed the partial basis for specifications 6, 14, 15, 17, 20 and 21, as well as the charges of negligence on more than one occasion and failure to maintain records. Inasmuch as the penalty imposed was not separately assessed as to each of the charges and specifications, remittal for a redetermination of the penalty is required (*see Matter of Rounds v Town of Vestal*, 15 AD3d 819, 823 [2005]; *Matter of Wojewodzic v O'Neill*, 295 AD2d 670, 672 [2002]).

Petitioner's arguments, to the extent that they are not addressed herein, have been considered and found to be lacking in merit.

Spain, Mugglin, Rose and Kane, JJ., concur. Adjudged that the determination is modified, without costs, by annulling so much thereof as found petitioner guilty of misconduct in specifications 6, 14, 15, 17, 20 and 21, and as imposed a penalty; matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.