OPINION OF THE COURT
Emily Jane Goodman, J.
Petitioner Luis Garcia brings this CPLR article 75 petition to vacate or modify the determination of the hearing officer, in a proceeding to determine the validity of charges brought against him by the New York City Department of Education. As a result *504 of the hearing, Garcia received a period of unpaid suspension, and was demoted from the position of assistant principal to that of teacher.
I. Background
Garcia was a tenured assistant principal assigned to Middle School 2 (the School), in Brooklyn, New York City, during the school terms of 2003-2004 and 2004-2005. Prior to that assignment, Garcia served as an assistant principal, an interim assistant principal, and before that, as a teacher, in a variety of schools. At the School, Garcia was in charge of supervising the seventh grade, and the subjects of art, bilingual education, English as a second language, Spanish, and physical education. He also acted as a school safety officer.
In April 2003, a new principal arrived at the School, Adrienne Spencer. Garcia received a rating of “Satisfactory” at the end of the 2002-2003 school year; however, beginning in January 2004, Spencer issued several letters to Garcia citing numerous failings in his duties, which mostly involved his failure to complete various tasks. At the end of the 2003-2004 school year, Spencer gave Garcia a rating of “Unsatisfactory.”
Garcia continued to receive letters of reprimand from Spencer in the following term, in January 2005, after he had completed a union-sponsored mentorship program. The letters highlighted yet more failures and errors on Garcia’s part.
On May 1, 2005, Spencer requested that the Office of the Special Commissioner of Investigation conduct an investigation of Garcia’s alleged misdeeds, including the serious charge of having traced over the signatures of teachers on several observational reports. The investigation ended with a report issued by the Special Commissioner of Investigation which did not contain mention of the alleged traced-over signatures, but did find that Garcia had committed a number of transgressions. The report recommended that Garcia be terminated.
In June 2006, the Department served 39 specifications against Garcia, alleging that, in the school years of 2003-2004 and 2004-2005, Garcia “rendered incompetent and inefficient service, was insubordinate and neglected his duties.” (Petition, exhibit A, specifications.) There followed a hearing in front of Hearing Officer Barbara C. Deinhardt (HO), during which numerous witnesses were called, and many documents put in evidence. The *505 hearings took 17 days,[1] resulting in a transcript numbering more than 3,700 pages. (Petition exhibit 3.)
In a decision and award, dated February 9, 2007 (petition exhibit B), and numbering 91 pages, the HO dismissed specifications 1, 2, 3 (b), 4, 5, 7, 8, 9, 10, 11, 13, 17, 20, 21, 23, 26, 28, 32, 34 (b), (c), 36, 38 and 39. She sustained specifications 33 (a), 6, 14, 15, 16, 18, 19, 22, 24, 25, 27, 30, 31, 33, 34 (a), (d) and 35, and sustained specifications 3 (a), 6 and 37 in part.[2] After extensively summarizing the parties’ positions in her decision, the HO stated:
“As noted above, I have sustained many of the specifications and dismissed others. While many of the specifications are not grave in themselves, what emerges is a picture of an administrator who is disengaged, unimaginative, resistant to working with and in support of his principal and dishonest; an administrator who does not take initiative or follow the directions of his supervisor; an administrator who cannot figure out how to get those under his supervision to follow his directions; and an administrator who has to be told several times to do what is expected of him and even then often does not act promptly or carefully. It also appears that Mr. Garcia has little or no acceptance or appreciation of his own shortcomings and little willingness to try to improve. When faced with criticism, his first instinct is always to find someone else to blame — Ms. Spencer, a teacher, a parent, even his wife — or some explanation as to why it is not true, rather than to find ways [to] deal constructively with the problem. I am very disturbed by Mr. Garcia’s repeated dishonesty in the arbitration, including the submission of apparently altered documents. His facile untruthfulness gives some plausibility to the statement from Annie Benn that he had told her that someone had advised him to 'sick out’ and he might just do that because people are after him.” (Report at 89-90.)
*506 On the other hand, the HO recognized Garcia’s over 25 years’ service to the Department of Education in various roles, without ever having received an unsatisfactory rating, and noted that “[i]t was clear that there was a significant conflict between [Garcia] and Ms. Spencer and that she, at least by the time of the arbitration, seemed motivated to find the worst in him, not the best.”
The HO stated that “[g]iven [Garcia’s] good record while he was a teacher, it may be that he is able to function as a teacher without difficulty” {id. at 90), but that he should not continue as an assistant principal. Rejecting the Department’s request that Garcia be terminated, the HO concluded that
“[w]hile as a general rule, removal from a position should not occur without more than one unsatisfactory rating, this principle does not govern a situation such as this where an employee demonstrates a refusal to accept criticism and to take affirmative steps to improve his performance and where he is engaged in dishonesty such as accepting pay for a day not worked and backdating an observation report. In light of the severity of some of the specifications, particularly those involving dishonesty and his failure to insure that the programs under his supervision showed ‘instructional rigor and fortitude,’ I find that a two-month suspension is appropriate and that he should then be returned to work with the Department as a teacher.” (Id. at 90-91.)
Garcia’s arguments are twofold: that the HO exceeded her authority by giving Garcia a penalty which is not authorized by Education Law § 3020-a, and that her findings of guilt on all but two of the specifications are not supported by substantial evidence, or are arbitrary and capricious.
II. Discussion
CPLR 7511 provides for the vacatur of an award in arbitration where “an arbitrator . . . exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made” (CPLR 7511 [b] [1] [iii]). The scope of judicial review of arbitration awards is extremely limited. (Matter of Brown & Williamson Tobacco Corp. v Chesley, 7 AD3d 368 [1st Dept 2004].) Where a party to arbitration claims that the arbitrator exceeded his or her powers, “[s]uch an excess of power occurs only where the arbitra *507 tor’s award violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator’s power.” (Matter of New York City Tr. Auth. v Transport Workers’ Union of Am., Local 100, AFL-CIO, 6 NY3d 332, 336 [2005]; see also Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y., 1 NY3d 72, 79 [2003].)
Judicial review of arbitral awards pursuant to Education Law § 3020-a (5) is limited to the grounds set forth in CPLR 7511. (Matter of Hegarty v Board of Educ. of City of N.Y., 5 AD3d 771 [2d Dept 2004].) “However, where, as here, the parties are forced to engage in compulsory arbitration, judicial review under CPLR article 75 requires that the award be in accord with due process and supported by adequate evidence in the record.” (Id. at 772 [internal quotation marks and citations omitted].) Further, “closer judicial scrutiny of the arbitrator’s determination” is required of the court in the cases of compulsory arbitration. (Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co., 89 NY2d 214, 223 [1996].) Thus, the award must have “evidentiary support and cannot be arbitrary and capricious.” (Id. at 223.)
This court finds that the HO’s decision is amply supported by the evidence, and is not arbitrary or capricious. The decision is very detailed and thoughtful, and makes substantial references to the record. It must be noted that, based on the evidence, the HO dismissed more than half of the charges, and that the decision is replete with specific references to the record with regard to both those specifications dismissed, as well as those sustained.
Garcia’s objections to each of the HO’s analyses and findings are, essentially, that he disagrees with them. However, Garcia’s disagreement with the HO’s findings does not render them arbitrary and capricious. Nor do his opinions as to the credibility of various witnesses. The credibility of witnesses at a hearing is left to the offices of the hearing officer, and not the court. (See Matter of Mack Markowitz Oldsmobile v State Div. of Human Rights, 271 AD2d 690 [2d Dept 2000] [a court is “precluded from passing upon the credibility of the witnesses at the administrative hearing”]; see also Matter of Youssef v State Bd. for Professional Med. Conduct, 6 AD3d 824, 825 [3d Dept 2004] [the assessment of a witness’s credibility is “within the exclusive province” of the administra *508 tive body].) The HO sets forth her opinion as to the credibility of all of the witnesses as the matter arises. In fact, she spends nine pages of her decision specifically discussing her reservations concerning the credibility of both Garcia and Spencer, in light of their mutual animosity, and continues to do so throughout the decision.
Further, Garcia goes through each of the sustained specifications in an attempt to justify his actions as to each, often complaining that an individual sustained specification is too “picayune” to warrant the penalties imposed. (See petitioner’s brief at 34.) However, he fails to credit the HO’s findings as a whole, or consider that the entirety of the sustained specifications, in light of the evidence found in the record, lay a groundwork for the penalty crafted by the HO. Therefore, as a result of the foregoing, Garcia has provided no basis on which to question the validity of the decision, which is upheld by this court.
Garcia is correct, however, that the penalty of demotion is without foundation in the law, in that it violates Education Law § 3020-a (4) (a). This section provides for the following specific penalties: a written reprimand, a fine, suspension for a fixed time without pay, and dismissal. The statute also provides that
“in lieu of the aforementioned penalties, the hearing officer, where he or she deems appropriate, may impose upon the employee remedial action including but not limited to leaves of absence with or without pay, continuing education and/or study, a requirement that the employee seek counseling or medical treatment or that the employee engage in any other remedial or combination of remedial actions.” (Id.)
Education Law § 3020-a (4) does not provide for the penalty of demotion. Neither does it provide for the remedy of demotion (which is not remedial in nature because it takes the job away, as opposed to rehabilitating the person until he or she can fulfill the demands of that job). Although it is clear that the HO was attempting to do justice and balance the nature of the offenses with petitioner’s past 25 years of service (eight as an assistant principal with no discipline or unsatisfactory ratings), the statute does not allow her to craft such a remedy. Consequently, the matter of an appropriate penalty, based on the HO’s findings of guilt (which this court upholds, infra), *509 must be remanded to the HO for determination.[3] Accordingly, it is ordered and adjudged that the petition is granted solely as to the remand of the matter to the HO for an assessment of appropriate penalty or penalties pursuant to Education Law § 3020-a, and that the matter is so remanded; and it is further ordered and adjudged that the remainder of the petition is denied, and the proceeding is dismissed.

. The final day of the hearings was conducted via conference call.

. The parties’ positions as to whether some specifications were sustained in part differ slightly, based on their interpretation of the language of the decision.

. Although the HO had no authority to demote petitioner to the position of teacher, that action may, in fact, be the most appropriate and just result in this case. Accordingly, to the extent that petitioner and respondents are able to, and do, agree to that result, a remand may be unnecessary.