Matter of Hill v New York State Bd. for Professional Med. Conduct (2018 NY Slip Op 07376)





Matter of Hill v New York State Bd. for Professional Med. Conduct


2018 NY Slip Op 07376


Decided on November 1, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 1, 2018

524838

[*1]In the Matter of DELYS ST. HILL, Petitioner,
v
NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT et al., Respondents.

Calendar Date: September 12, 2018

Before: Garry, P.J., McCarthy, Lynch, Aarons and Rumsey, JJ.


Anthony Scher, Rye Brook, for petitioner.
Barbara D. Underwood, Attorney General, Albany (Erin R. McAlister of counsel), for respondents.



MEMORANDUM AND JUDGMENT
Aarons, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c [5]) to review a determination of the Administrative Review Board for Professional Medical Conduct, among other things, suspending petitioner's license to practice medicine in New York for 90 days.
Petitioner, who specializes in physical medicine and rehabilitation, is a physician licensed to practice medicine in New York. Petitioner was the sole director and officer of her professional medical corporation, which she operated from 2006 to 2007 in the Bronx. In August 2015, the Office of Professional Medical Conduct (hereinafter OPMC) charged petitioner with 30 specifications of professional misconduct arising from her treatment of seven patients in 2006 and 2007 who were involved in automobile accidents. Following a hearing, a Hearing Committee of respondent State Board for Professional Medical Conduct sustained 22 of the 30 specifications, which included charges of fraudulent practice of medicine, negligent practice of medicine, ordering excessive tests and failing to maintain accurate medical records. As a consequence, the Hearing Committee voted to suspend petitioner's license for 90 days, to place her on probation for five years following the suspension period and to permanently limit her license to practice medicine in a Public Health Law article 28 facility. Upon review, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) sustained the Hearing Committee's determination, but modified the penalty by overturning that part that limited petitioner's license to practice only in a Public Health Law article 28 facility. The ARB instead banned petitioner from owning a professional corporation, engaging in solo medical practice and operating her own office. Petitioner thereafter commenced this CPLR article 78 proceeding in this Court (see Public Health Law § 230-c [5]) seeking to annul the ARB's determination.
Where, as here, the ARB has reviewed the Hearing Committee's findings, "our review is limited to ascertaining whether the ARB's determination was arbitrary and capricious, affected by error of law or an abuse of discretion" (Matter of Arnett v New York State Dept. of Health, 69 AD3d 1001, 1002 [2010] [internal quotation marks, brackets and citations omitted], lv denied 14 NY3d 707 [2010]; see Matter of Hason v Department of Health, 295 AD2d 818, 822 [2002])[FN1]. The ARB's determination will not be disturbed so long as it has a rational basis and is supported by the facts (see Matter of Sidoti v State Bd. for Professional Med. Conduct, 55 AD3d 1162, 1164 [2008]; Matter of Gottesman v New York State Dept. of Health, 229 AD2d 742, 743 [1996]). "Resolution of issues of credibility and the weighing of testimony, expert or otherwise, is solely within the province of the ARB" (Matter of Cattani v Shah, 122 AD3d 1099, 1099 [2014] [citations omitted]; see Matter of Wieder v New York State Dept. of Health, 77 AD3d 1207, 1208 [2010]; Matter of Spartalis v State Bd. for Professional Med. Conduct, 205 AD2d 940, 941-942 [1994], lv denied 84 NY2d 807 [1994]).
Regarding the issue of the alleged delays in the investigation and the bringing of disciplinary charges against petitioner, "[t]here is no statute of limitations and the doctrine of laches does not apply to physician disciplinary proceedings" (Matter of Pearl v New York State Bd. for Professional Med. Conduct, 295 AD2d 764, 766 [2002], lv denied 99 NY2d 501 [2002]; see Matter of Schoenbach v DeBuono, 262 AD2d 820, 821 [1999], lv denied 94 NY2d 756 [1999]). Accordingly, only if petitioner demonstrates that she suffered actual prejudice by the delay will the determination be annulled (see Matter of Monti v Chassin, 237 AD2d 738, 740 [1997]; Matter of Rojas v Sobol, 167 AD2d 707, 708 [1990], lv denied 77 NY2d 806 [1991]).
To that end, petitioner's claim of prejudice rests on the notion that the Hearing Committee did not have the entire medical record for each subject patient. The record, however, discloses that, in February 2008, OPMC requested from petitioner "a certified copy of the complete medical record[s]" for the subject patients (emphasis omitted) and that the response thereto contained a certification from petitioner's billing clerk at the time attesting that "these are [the] complete, true and exact copies" of the requested records. In an April 2010 letter, OPMC advised petitioner that her medical practice was being investigated and that she had the opportunity to be interviewed in connection with the investigation. This letter further stated that OPMC was investigating, among other things, "the alleged failure to maintain acceptable records, . . . the excessive and unnecessary testing and treatment rendered to the patients . . . and the formation, operation and staffing of [her] professional corporations," and that the interview "may, if appropriate, cover other areas relevant to the evaluation, diagnosis, treatment and follow-up provided to the specified patients during the specified timeframes." In response to the April 2010 letter, petitioner sent OPMC another set of the subject patients' medical records, which was nearly identical to the set sent in 2008. Although petitioner claimed that she only provided billing excerpts to OPMC in 2008 because she was under the impression that the investigation was limited to billing issues and that other medical documentation existed for each subject patient but that she had purged them prior to being charged by OPMC in 2015, the Hearing Committee did not find these explanations to be credible and concluded that it had the complete medical record for each patient. In view of the foregoing, we discern no prejudice suffered by petitioner (see Matter of Giffone v DeBuono, 263 AD2d 713, 714-715 [1999]; Matter of Monti v Chassin, 237 AD2d at 740; compare Matter of Gold v Chassin, 215 AD2d 18, 22-23 [1995], lv denied 87 NY2d 805 [1996]).
Petitioner also contends that the Hearing Committee erred in determining that she was guilty of the fraudulent practice of medicine by billing for electromyography (hereinafter EMG) not performed. We disagree. As an initial matter, petitioner misconstrues the Hearing Committee's findings and determination with respect to this specification. The Hearing [*2]Committee did not find that petitioner failed to perform EMGs on patients. Rather, the Hearing Committee found that "[petitioner] and her employee made unsupported diagnoses for these seven patients, and she then performed unnecessary tests, including invasive electrodiagnostic tests" and that the "medical histories, physical examinations and reports recorded by [petitioner] and her employee were formulaic and designed to justify unnecessary tests and treatments." That said, OPMC's expert testified that the performance of an EMG was neither indicated nor clinically supported based upon the patients' respective symptoms and that such tests were ordered too soon based upon when the automobile accident occurred for each patient. The expert further testified that, with respect to the patients, "there was a pattern of unsupported diagnoses . . . [and] a pattern of inappropriate testing being ordered." Based on the foregoing and taking into account that OPMC's expert was found to be credible, the ARB rationally concluded that petitioner engaged in the fraudulent practice of medicine (see Matter of Steckmeyer v State Bd. for Professional Med. Conduct, 295 AD2d 815, 817-818 [2002]; Matter of Saunders v Administrative Review Bd. for Professional Med. Conduct, 265 AD2d 695, 696 [1999]; cf. Matter of Patin v State Bd. for Professional Med. Conduct, 77 AD3d 1211, 1215 [2010]).
In challenging the determination with respect to the specification that she failed to maintain accurate medical records, petitioner contends that the Hearing Committee and the ARB misapplied the law. Contrary to petitioner's assertion, however, whether a physician is guilty of such specification is not limited only to instances where the patient's record failed to convey objectively meaningful medical information and, therefore, compromised the continuity of care if the treating physician was unavailable. Rather, providing meaningful information to other physicians is a part of the reason, but not the sole one, for the record-keeping requirement (see Matter of Schwarz v Board of Regents of Univ. of State of N.Y., 89 AD2d 711, 712 [1982], lv denied 57 NY2d 604 [1982]). As such, although petitioner's expert testified that he could reconstruct a patient's history based upon petitioner's records, such mere fact is insufficient to show that the patients' records complied with Education Law § 6530 (32) (see Matter of Brown v University of State of N.Y., 147 AD2d 784, 786 [1989]).
We reject petitioner's assertion that she was entitled to reopen the administrative hearing based on newly discovered evidence. Assuming, without deciding, that the application may be directed to the Chief Administrative Law Judge as was done here, the statutory scheme does not provide for the reopening of an administrative hearing. In this regard, petitioner may make an application to OPMC's director "requesting vacatur or modification of the determination and order" (Public Health Law § 230 [10] [q]). After reviewing the application, the director may join such application if he or she determines, among other things, that "there [was] new and material evidence that was not previously available which, had it been available, would likely have led to a different result" (Public Health Law § 230 [10] [q]). Upon the joint application, the chairperson for the State Board for Professional Medical conduct is vested with the authority to grant or deny the application (see Public Health Law § 230 [10] [q]). Given that the only two remedies available are the "vacatur or modification of the determination and order" (Public Health Law § 230 [10] [q]), petitioner is not entitled to her requested relief.
As to the penalty, "the ARB is not bound by the Hearing Committee's determination . . . but, rather, may impose whatever penalty it deems appropriate" (Matter of Bing Tang v DeBuono, 235 AD2d 745, 746 [1997]). In view of the entire record, we find that the penalty imposed, as modified by the ARB, was not "so incommensurate with the offense as to shock one's sense of fairness" (Matter of Catsoulis v New York State Dept. of Health, 2 AD3d 920, 922 [2003] [internal quotation marks and citation omitted]; see Matter of Elbaz v New York State Dept. of Health, 156 AD3d 972, 974 [2017]; Matter of Maglione v New York State Dept. of Health, 9 AD3d 522, 525 [2004]; Matter of Prado v Novello, 301 AD2d 692, 694 [2003]). Petitioner's remaining arguments have been examined and do not mandate annulment of the ARB's determination.
Garry, P.J., McCarthy, Lynch and Rumsey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.



Footnotes

Footnote 1: To the extent that petitioner asserts that substantial evidence does not support the Hearing Committee's determination, such argument is misplaced given that this is a proceeding to review the ARB's determination (see Matter of Conteh v Daines, 52 AD3d 994, 995 [2008]; Matter of Chua v Chassin, 215 AD2d 953, 954 [1995], lv denied 86 NY2d 708 [1995]).