Matter of Gutierrez v New York State Bd. for Professional Med. Conduct (2019 NY Slip Op 01862)





Matter of Gutierrez v New York State Bd. for Professional Med. Conduct


2019 NY Slip Op 01862


Decided on March 14, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 14, 2019

525704

[*1]In the Matter of JAIME GABRIEL GUTIERREZ, Petitioner,
v
NEW YORK STATE BOARD FOR PROFESSIONAL MEDICAL CONDUCT, Respondent.

Calendar Date: January 7, 2019

Before: Egan Jr., J.P., Lynch, Aarons, Rumsey and Pritzker, JJ.


Anthony Z. Scher, Rye Brook, for petitioner.
Letitia James, Attorney General, New York City (James M. Hershler of counsel), for respondent.



MEMORANDUM AND JUDGMENT
Lynch, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Public Health Law § 230-c) to review a determination of the Administrative Review Board for Professional Medical Conduct, among other things, placing petitioner on probation for five years with a practice monitor.
Petitioner, a physician licensed to practice in New York, was charged with multiple specifications of professional misconduct arising from his treatment of patients who suffered from acute illness while visiting New York City from foreign countries. The charges included exercising undue influence over the patients to exploit them for financial gain (see Education Law § 6530 [17]) and failing to maintain accurate medical records for patients (see Education Law § 6530 [32]). Following a hearing, a Hearing Committee of respondent sustained only the medical records charge for three patients (hereinafter patients E, F and G). The Hearing Committee issued an order of censure and reprimand, with a directive requiring petitioner to complete a course in medical record keeping and coding. On administrative cross appeals, the Administrative Review Board for Professional Medical Conduct (hereinafter ARB) modified by finding that petitioner exercised undue influence over three patients (hereinafter patients A, C and D). The ARB imposed an additional penalty by placing petitioner on probation for five years with a practice monitor. Petitioner commenced this CPLR article 78 proceeding in this Court seeking review of the ARB's determination.
Where, as here, the ARB has reviewed the Hearing Committee's findings, "our review is limited to whether the ARB's decision is arbitrary and capricious, affected by an error of law or an abuse of discretion, and our inquiry distills to whether the ARB's determination has a rational basis and is factually supported" (Matter of Singh v New York State Dept. of Health Bd. of Professional Med. Conduct, 74 AD3d 1391, 1392 [2010] [internal quotation marks, brackets and [*2]citations omitted]). Credibility assessments rest within the province of the ARB (see Matter of Cattani v Shah, 122 AD3d 1099, 1099 [2014]).
Education Law § 6530 defines professional misconduct as including, among other things, "[e]xercising undue influence on the patient, including the promotion of the sale of
services, . . . in such manner as to exploit the patient for the financial gain of the licensee or of a third party" (Education Law § 6530 [17]). The record shows that when patient A became ill, the hotel front desk put her in touch with a medical service, called Doctors 24 Hours, that provided consultations in the patient's hotel room. This service, referred to as a "hotel concierge practice," was owned by petitioner's fiancée. Patients C and D arranged for similar medical consultations in their hotel rooms through a separate service called the Global Medical Center. Petitioner attended to patients A and D on behalf of the respective service, and his physician's assistant attended to patient C. In each instance, a dispute arose over the amount of the fee, with charges of $3,700, $3,000 and $5,000 to patients A, C and D, respectively. The common protocol was for each patient to provide credit card information to the service in advance of the consultation. The dispute centers on whether each patient was informed as to the amount of the charge in advance of the consultation. Patient A and the mother of patient D testified that they only learned of the charge after the consultation was completed. In patient A's case, she maintains that petitioner informed her that she needed to go directly to the hospital for gall stones and then asked her to sign a credit card slip for $3,700. When she balked, petitioner assured her that the charge would be covered by her travel insurance. Patient D's mother testified that petitioner attended to her daughter for about 10 minutes and prescribed antibiotics for flu symptoms. After completing the evaluation, petitioner took a picture of her credit card and she was subsequently charged $5,000. When she objected, petitioner responded that "this is how much, you know, doctors charge in the United States." After treating patient C for a stomach virus, petitioner's physician's assistant testified that she telephoned petitioner for instructions and was directed to charge $3,000. The physician's assistant testified that patient C initially refused to pay. A confrontational phone call ensued between patient C and petitioner, after which patient C handed the phone back to the physician's assistant and petitioner advised "she will pay."
Although petitioner maintained that the fee was prearranged between each patient and the service, that factual conflict presented a credibility issue for the ARB to resolve. Moreover, the record shows that petitioner was proactive with respect to the fees, securing additional credit card documentation from patients A and D and engaging in a contentious phone conversation with patient C. Petitioner acknowledged that he had patients sign credit card authorizations "to prevent a charge back" against the medical service. Significantly, petitioner also confirmed that his services were provided on a flat fee basis, substantiating that the charge was at least known to him in advance of his evaluation of each patient. Although petitioner maintains that he was an independent contractor and that his fiancée, as owner of Doctors 24 Hours, received all the profit, he also acknowledged receiving $200,000 for services rendered in 2015. The statute also extends to conduct that benefits a third party — in this instance, the medical service owned by petitioner's fiancée. In our view, the ARB's determination to sustain the undue influence charge is rational and has ample support in the record. The question here is not simply the amount of the fee, but whether the patients were duly informed in advance. The record supports the ARB's determination that they were not and, given the circumstances of each patient, petitioner engaged in undue influence to procure payment benefitting both himself and the medical service owned by his fiancée.
We further conclude that the ARB rationally determined that petitioner did not keep adequate medical records (see Matter of Insler v State Bd. for Professional Med. Conduct, 38 AD3d 1095, 1098 [2007]; Matter of Youssef v State Bd. for Professional Med. Conduct, 6 AD3d 824, 825 [2004]). Education Law § 6530 (32) provides that a physician commits professional misconduct by "[f]ailing to maintain a record for each patient which accurately reflects the evaluation and treatment of the patient." "A medical record that fails to convey objectively meaningful medical information concerning the patient treated to other physicians is inadequate" (Matter of Mucciolo v Fernandez, 195 AD2d 623, 625 [1993] [citations omitted], lv denied 82 NY2d 661 [1993]). To begin, petitioner conceded that he did not retain complete copies of the [*3]medical records at issue, which had been provided to a law firm. Although conflicting medical opinions were presented, the ARB could rationally have accepted the opinion rendered by the medical expert for the Department of Health, who found that the medical records of patients E, F and G fell below medically accepted record-keeping standards. Nor did petitioner preserve his contention that the Hearing Committee inconsistently sustained specification No. 12, but not specification No. 13. Both charges related to a violation of Education Law § 6530 (32). As petitioner did not raise this argument on appeal to the ARB, the contention has not been preserved for our review (see Matter of Arnett v New York State Dept. of Health, 69 AD3d 1001, 1004 [2010], lv denied 14 NY3d 707 [2010]). In any event, the charges differ in that specification No. 12 alleges that petitioner failed to maintain adequate records for patients E, F and G, and specification No. 13 alleges that petitioner failed to maintain any medical records for a group of patients, including patients E, F and G. Finally, the ARB was authorized to impose a different penalty than the Hearing Committee (see Matter of St. Hill v New York State Bd. for Professional Med. Conduct, 166 AD3d 1092, 1096 [2018]), and we find that the penalty imposed, including the probation term added by the ARB, "was not so incommensurate with the offense as to shock one's sense of fairness" (id. [internal quotation marks and citations omitted]).
Egan Jr., J.P., Aarons, Rumsey and Pritzker, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.